**Inglesino, Webster, Wyciskala & Taylor, LLC**
Nicholas A. Grieco, Esq. NJ Attorney Id. No.: 031971990
Graham K. Staton, Esq. NJ Attorney Id. No.: 217602017
600 Parsippany Road, Suite 204
Parsippany, New Jersey 07054
(973) 947-7111
*Attorneys for Defendants, Paterson Board of Education, Superintendent Eileen Shafer,*
*Deputy Superintendent Susana Perone, Yacine Abada, and Mohammed Saleh*

| | |
|---|---|
| JALAL ABDALLAH**,**<br><br>    Plaintiff,<br><br>vs.<br><br><br>PATERSON BOARD OF EDUCATION**,** SUPERINTENDENT EILEEN SHAFER, DEPUTY SUPERINTENDENT SUSANA PERON, YACINE ABADA, AND MOHAMMED SALEH,<br><br>    Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION NO.: 2:23-CV-01675<br><br><br>**NOTICE OF REMOVAL**<br><br>**(28 U.S.C. § 1441(b))** |

TO:               Mr. William T. Walsh
                  Clerk of the United States District Court
                  Martin Luther King, Jr. Federal Building and
                  United States Courthouse
                  50 Walnut Street
                  Newark, New Jersey 07101

ON NOTICE TO:     Dana Wefer, Esq.
                  Law Offices of Dana Wefer, LLC
                  P.O. Box 374
                  290 Hackensack Street
                  Wood-Ridge, NJ 07075


**PLEASE TAKE NOTICE** in accordance with 28 U.S.C. §§ 1441-1451, Defendants Paterson

Board of Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Perone, Yacine

Abada, and Mohammed Saleh (collectively referred to as "Defendants"), by their attorneys

2035-06736\#899123v1

Inglesino, Webster, Wyciskala & Taylor, LLC, hereby give notice that they have removed the above-entitled case from the Superior Court of New Jersey, Law Division, Passaic County, to the United States District Court for the District of New Jersey, Vicinage of Newark. In support of this notice, Defendants state the following:

1.     This matter was commenced by Plaintiff Jalal Abdallah (hereinafter referred to as "Plaintiff") in the Superior Court of New Jersey, Law Division, Passaic County, Docket No. PAS-L-584-23.

2.     Plaintiff filed the Complaint on March 1, 2023. (See Plaintiff's Complaint, annexed hereto as **Exhibit A**).

3.     Plaintiff subsequently filed a First Amended Complaint on March 3, 2023. (See Plaintiff's First Amended Complaint, annexed hereto as **Exhibit B**).

4.     The Defendants were served with the First Amended Complaint on or about March 7, 2023.

5.     The United States District Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1331 because Plaintiff's causes of action involves a federal question.

6.     This removal is timely under 28 U.S.C. § 1446(b) in that it was filed within thirty (30) days of the filing of the First Amended Complaint.

7.     Defendants seek removal pursuant to 28 U.S.C. § 1441 because the First Amended Complaint alleges causes of action arising under federal law and/or the United State Constitution. (See e.g. Exhibit A at Count Four ¶¶ 57-78.)

8.     No previous petition or notice has been made for the relief sought herein.

9.     Pursuant to Local Civil Rule 40.1(a), this matter should be allocated to the Newark Vicinage inasmuch as this location is convenient for the litigants, counsel and witnesses.

2035-06736\#899123v1

10.     A Notice of Filing the Notice of Removal to the United States District Court for the District of New Jersey, along with a copy of this Notice, will be filed with the Clerk of the Superior Court of New Jersey in Trenton and the Clerk of the Superior Court of New Jersey in Passaic County. (See Notice of Filing of the Notice of Removal annexed hereto as **Exhibit C**). Additionally, a copy of both Notices will be served upon all counsel of record in this matter.

**WHEREFORE**, Defendants Paterson Board of Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Perone, Yacine Abada, and Mohammed Saleh, respectfully give notice that the above-entitled matter is removed to the United States District Court for the District of New Jersey from the Superior Court of New Jersey, Law Division, Passaic County.

INGLESINO, WEBSTER, WYCISKALA & TAYLOR, LLC
*Attorneys for Defendants, Paterson Board of Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Perone, Yacine Abada, and Mohammed Saleh*


By:     */s/ Nicholas A. Grieco*
        **NICHOLAS A. GRIECO, ESQ.**
        ngrieco@iwwt.law
        600 Parsippany Road, Suite 204
        Parsippany, New Jersey 07054
        (973) 947-7111

Dated: March 23, 2023

2035-06736\#899123v1

## CERTIFICATION OF FILING AND SERVICE

On March 24, 2023, I caused a copy of the foregoing Notice of Filing of Notice of Removal to be served upon the Clerk of the Superior Court of New Jersey in Trenton via ecourts to:

> Clerk, Superior Court of New Jersey
> Hughes Justice Complex
> 25 W. Market Street
> CN-970
> Trenton, New Jersey 08625

On March 24, 2023, I caused a copy of the foregoing Notice of Filing of Notice of Removal to be served upon the Clerk of the Superior Court of New Jersey in Passaic County via ecourts to: Clerk, Superior Court of New Jersey

> Passaic County
> 77 Hamilton Street
> Paterson, New Jersey

On March 24, 2023, I caused a copy of the foregoing Notice of Filing of Notice of Removal to be served upon counsel of record via ECF to:

> Dana Wefer, Esq.
> Law Offices of Dana Wefer, LLC
> P.O. Box 374
> 290 Hackensack Street
> Wood-Ridge, NJ 07075

On March 24, 2023, I caused a copy of the foregoing Notice of Filing of Notice of Removal to be served upon the Clerk of the United States District Court for the District of New Jersey via ECF to:

> William T. Walsh
> Clerk of the United States District Court
> Martin Luther King, Jr. Federal Building and
> United States Courthouse
> 50 Walnut Street
> Newark, New Jersey 07101

2035-06736\#899123v1

I hereby certify that the foregoing statements made by me are true. I am fully aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**INGLESINO, WEBSTER, WYCISKALA & TAYLOR, LLC**
*Attorneys for Defendants, Paterson Board of Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Perone, Yacine Abada, and Mohammed Saleh*

By:    */s/ Nicholas A. Grieco*
       **NICHOLAS A. GRIECO, ESQ.**
       ngrieco@iwwt.law
       600 Parsippany Road, Suite 204
       Parsippany, New Jersey 07054
       (973) 947-7111

Dated: March 24, 2023

2035-06736\#899123v1

# EXHIBIT A

Law Offices of Dana Wefer, LLC
P.O. Box 374
290 Hackensack Street
Wood-Ridge, NJ 07075
973-610-0491

| | |
|---|---|
| JALAL ABDALLAH,<br><br>Plaintiff,<br><br>vs.<br><br>PATERSON BOARD OF EDUCATION, SUPERINTENDENT EILEEN SHAFER, DEPUTY SUPERINTENDENT SUSANA PERON, YACINE ABADA, ASSISTANT SUPERINTENDENT OF HUMAN RESOURCES LUIS ROJAS, and MOHAMMED SALEH<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION:  PASSAIC COUNTY<br><br>DOCKET NO.  PAS-L-<br><br>CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiff Jalal Abdallah ("Plaintiff") by way of Complaint against the Paterson Board of

Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Peron, Yacine Abada,

Assistant Superintendent of Human Resources Luis Rojas, and Mohammed Saleh (collectively

"Defendants") says:

## **FACTS**

### *PLAINTIFF'S EMPLOYMENT AND THE DEPARTMENT'S ORGANIZATION*

1. Jalal Abdallah was hired by the Paterson School Board in February of 2006 as a PC Tech.

2. By his nature, Mr. Abdallah is constantly bettering himself and seeking to achieve new heights

   in his career. His resume is a smorgasbord of certifications, education, and training programs.

1

He is always seeking new opportunities to learn skills, save the district money, and provide excellent service.

3. When Mr. Abdallah began working for Paterson Public Schools in 2006, the department was called the Department of Technology. It was divided into a help desk section and IT support.

4. From 2006 to 2021, Mr. Abdallah's evaluations enthused about his willingness to take on new tasks, learn new skills, and be a leader. His evaluators consistently recognized that he was ready to be promoted and take on more responsibilities, specifically and especially in the area of networking. For example:

   a. Mr. Abdallah's 2021 evaluation stated that he "is a team leader" and that he was consistently present through the pandemic. Network Services Director Yacine Abada ("Mr. Abada"), stated that he "would like to see Mr. Abdallah involved more with networking projects and other network applications. HVAC…Security cameras, and other facilities technology equipment in the future."

   b. Mr. Abdallah's 2020 evaluation recognized that he is a "member of the Network Services team of troubleshooters that oversees the network devices" and that Mr. Abdallah had specifically taken "ownership of Solarwinds network software and keeps it updated as the network always changes."  This evaluation noted that he "oversees network projects regarding the new district JACE heating and temperature systems…as well as the security cameras network needs."  His evaluator stated that he would "continue to explore ways to enable Jalal to have the necessary time and obtain the additional skills to meet any network related challenge that comes our way."

   c. Mr. Abdallah's 2019 evaluation noted that he was continuing to grow and "evolve in the area of networking" and noted that he was "a member of the core Network Services

2

team." He was praised because he "took ownership [of] and currently manages the network segment of projects dealing with camera and heating vendors."  The reviewer noted that he "will seek to obtain more opportunities for Jalal to keep up with the newer upcoming network technology projects," which "would enable Jalal to have the necessary skills to meet the challenge of any future network troubleshooting and upgrades."

d.  In 2017, Mr. Abdallah's review noted his readiness and capability to lead, stating that his supervisor would like him to "start making important decisions whenever there is a technology concern" and that he be able to "take additional networking courses to advance his skill set."

e.  His 2016 review stated that the department was undergoing a restructuring process and "decided to increase Mr. Abdallah's responsibilities by having him work in a new capacity as a network specialist" and that he was being tasked "specifically with documenting the existing network configurations, holding our vendors accountable with providing move, add and change logs with our network and building his capacity" so that the department can become "proficient to manage our own network."

5.  Mr. Abdallah takes pride in his work and has gone above and beyond to use his skills to benefit the district. For example, Mr. Abdallah saved the district money by working with Solarwinds vendor's engineer and rebuilding the solarwinds program to contain all district network devices. This eliminated the need for a separate network monitoring vendor. The previous monitoring service called Presidio used to cost thousands of dollars a month to monitor the network.  Mr. Abdallah's work eliminated this expense for the district.

3

6. In 2013, Mr. Abdallah was promoted to the position of field tech support by Ralph Barca, who was the Director of Technology.

7. In April of 2014 Ralph Barca left his position as Director of Technology and Mr. Kenneth Sumter became the Interim Supervisor of Technology, a position he stayed in until April 2017. Mr. Abdallah worked closely and successfully with Mr. Sumter on district wide fiber network upgrade project.

8. In February of 2015 until June of 2019, Principal Mr. Jose Correa became Executive Director of Technology overseeing both Technology and Helpdesk departments. In May 2016, Dr. Jeron Campbell was hired as chief Data, Accountability, and Technology officer to oversee 4 departments; accountability, management information systems, assessment planning and evaluation, and technology. Eventually Ralph Barca's position was eliminated and divided into 2 new positions by Dr. Jeron Campbell in late 2017, "The Director of Network Services." and "The director of Business Applications".

9. When Mr. Abada became the Director of Network Services, there were two positions for Network Technicians ("network tech"), which had been unfilled since 2015 and 2016. The last employees in the network tech position were paid approximately $20,000 more than Mr. Abdallah's current salary.

*MR. ABDALLAH IS DENIED A PROMOTION AND RAISE DUE TO HIS ETHNICITY*

10. In or around March 17, 2021, the network tech positions were reintroduced. Mr. Abdallah learned that the position was going to be filled because Mr. Abada sent him the job description so that Mr. Abdallah could edit it, as he has edited many documents for Mr. Abada in the past.

4

11. Mr. Abdallah aspired to officially become a network tech. He is qualified for the positon. In addition to more than a decade and a half of stellar evaluations and being one of the longest tenured employees in the department, he was already doing the duties associated with the network tech job, was already on the Network Services Team, and had possessed full network access privileges for approximately five years, since network services started.

12. On March 17, 2021, Mr. Abdallah applied for the network tech position.

13. Mr. Abada discouraged Mr. Abdallah from applying for the network tech position, stating that they needed a highly qualified engineer "we can all learn from." Mr. Abdallah asked Mr. Abada: "Do you have someone in mind"? Mr. Abada paused and replied "Yes".

14. Mr. Abdallah maintained his application despite Mr. Abada's statement that he already had someone in mind for the position. Ultimately, Mr. Abdallah was not even called for an interview.

15. Instead of hiring a highly qualified engineer, Mr. Abada hired Ilyes Khelaifi a fellow Algerian from NY with no hands-on networking experience or skills. In fact, Mr. Abdallah had to train Mr. Khelaifi on the basics of two widely used networking programs, Solarwinds and Putty. Putty is the most common software program used to gain access to network switches and routers for configuration purposes, yet Mr. Khelaifi had no experience with it. Mr. Khelaifi mentioned to Mr. Abdallah that he never used Putty and has no hands on network experience.

16. Mr. Abdallah was passed over for a position for which he was eminently qualified because he is not Algerian. This was unlawful discrimination based on ethnicity and nation of origin.

5

*DISCRIMINATION BASED ON AGE*

17. Mr. Abada has a history of making negative comments to workers about their ages and threatening to replace older workers with younger workers.

18. For example, on numerous occasions, Mr. Abada has made comments to his subordinates that he needs to start hiring younger techs when older workers have called out sick or mentioned having back pain.

19. On one occasion when Mr. Abdallah and others were called on to work overtime, Mr. Abada said "You know I can hire teenagers to work this overtime for less money."

20. Mr. Abada's comments create a hostile work environment for older workers.

21. Mr. Abada's animus toward older workers is reflected in his hiring patterns. In 2021, there were 12 new hires and, upon information and belief, all but 3 are under 40. Moreover, Mr. Khelaifi, who was given the position of network tech over Mr. Abdallah, is in his twenties.

*MR. ABDALLAH BLOWS THE WHISTLE ON THE UNQUALIFIED HIRES BASED ON ETHNICITY, AGE, AND NEPOTISM, AND THE RETALIATION BEGINS*

22. On September 22, 2021, Mr. Abdallah called Vince Arrington the board commissioner who was in charge of the Technology aspect of the Paterson Public School district. Mr. Abdallah told Commissioner Arrington that he was denied an interview due to possible nepotism, although he did not withdraw his application for the position and wanted Mr. Arrington to look into the interview process. Mr. Arrington agreed to reach out to Deputy Superintendent, Susana Peron, who oversees Network Services and Helpdesk within the school district.

23. Dr. Peron never contacted Mr. Abdallah concerning her communication with Commissioner Arrington. Mr. Abdallah followed up with Commissioner Arrington but his text and call were not answered.

6

24. On October 13, 2021, Mr. Abdallah filed a complaint with the affirmative action office concerning the hostile environment Mr. Abada had created by making disparaging and discriminatory comments based on age and stating that he believes one of the reasons he did not even receive an interview for the network tech position is because he is over 50. Mr. Abdallah's complaint was allegedly investigated and found unfounded, but Mr. Abdallah has not been given any more information about his complaint.

25. On March 30, 2022, Mr. Abdallah met with Luis Rojas, the Assistant Superintendent of Human Resources and a representative from the Affirmative Action Office. Mr. Abdallah told Assistant Superintendent Rojas about the nepotism in the Department. He told Mr. Rojas that Mr. Abada had a history of hiring unqualified people for personal and discriminatory reasons. In particular, Mr. Abdallah told Mr. Rojas that Mr. Abada had hired Umer Farooq, a New York resident to work within the department because Mr. Farooq was the landlord of a friend of Mr. Abada's who belongs to the same Algerian community. In addition, Mr. Abdallah told Mr. Rojas that he believed Mr. Khelaifi was unqualified for the position of network tech and was hired based on Mr. Abada's improper consideration of immutable characteristics that it is unlawful to consider in hiring decisions. Mr. Abdallah told Mr. Rojas about the retaliation he was experiencing. Mr. Rojas told Mr. Abdallah that he would elevate the issue to Dr. Peron.

26. Mr. Abdallah tried to blow the whistle on discrimination, waste of public resources, and nepotism through a variety of different channels, however none of his efforts went anywhere because they all were elevated to Dr. Peron, who did nothing. Dr. Peron appears to be close with Mr. Abada. Upon information and belief, Dr. Peron is protecting Mr.

7

Abada and allowing the retaliation to continue to protect Mr. Abada and constructively terminate Mr. Abdallah.

27. Mr. Abdallah tried to go above Dr. Peron's head directly to the Superintendent Eileen Shafer, but she said that Human Resources had said his complaints were unfounded. It did nothing to resolve the retaliation Mr. Abdallah is experiencing.

28. Since blowing the whistle on the nepotism and waste and exercising his rights under the NJ LAD to Commissioner Arrington, Assistant Superintendent Rojas, and the affirmative action department, Mr. Abdallah has faced retaliation and a work environment so hostile that if Mr. Abdallah were to voluntarily leave, it would constitute constructive termination.

29. Mr. Abdallah's prior evaluations show a steady growth and leadership in the area of network services. Though the official position of network technician was not filled until June 2021, Mr. Abdallah's evaluations show that he was performing network service work, duties, and responsibilities already with an expectation of increased responsibilities and growth.

30. As part of the retaliation against him, Mr. Abdallah's projects and job responsibilities are being taken away from him and he is excluded from network related meetings that he would have been included in prior to the discrimination and retaliation.

31. As reflected in his evaluations, Mr. Abdallah was in charge of important network projects, but they have been taken away from him, including the network projects of any additional future Kronos implementations, HVAC, and security cameras.

32. Mr. Abdallah's 2022 evaluation shows that he has continued to be an outstanding employee, but the comments differ from his prior evaluations, describing him as "assisting"

8

network services "when needed" instead of being a part of the network services team and leadership, as he was before the discrimination and retaliation began.

33. Moreover, Mr. Abdallah's 2022 evaluation wrongly states that he was absent 57 times. Mr. Abada counted Mr. Abdallah's vacation days as absences, which had never been done before. Mr. Abdallah contacted the department confidential secretary, Ms. Sabrina Tanner, to find out how he could have this corrected. Ms. Tanner confirmed that vacation days are not supposed to be counted as absences. Mr. Abdallah has made an effort to reach out to human resources to have this corrected, but as far as he knows it has not been fixed. Upon information and belief, Mr. Abada counted Mr. Abdallah's vacation days as absences to create an appearance of absenteeism and create a pretext to fire him. Upon information and believe, Mr. Abada may have added the 57 days absent after Mr. Abdallah signed the evaluation because Mr. Abdallah would not have signed it with that incorrect information.

34. In addition to his duties being taken from him, he has received no training since 2021 while other Network Services team members, including Mr. Khelaifi, have received training on network devices, Wi-Fi software, Firewall, and network software that were upgraded in the district. Mr. Abdallah's prior trajectory of growth was derailed as part of the retaliation.

35. In addition to the above discrimination and retaliation, Mr. Abdallah is suffering under a hostile work environment as a result of the discrimination and retaliation. He is alienated, talked down to, yelled at, and just generally mistreated by Mr. Abada.

36. The retaliation against Mr. Abdallah is so overt that a coworker has commented on it to him and he has been warned that "Yacine Abada is looking for anything" to fire Mr. Abdallah. It is likely he has only been saved from termination because his unimpeachable work record leaves no room for pretext.

9

37. As a result of the discrimination, retaliation, and facts alleged in Count 5 of this complaint, Mr. Abdallah has suffered anxiety, sleepless nights, has lost over twenty pounds, and has suffered emotionally in a way that no person should be expected to endure.

38. Unfortunately, when Mr. Abdallah has tried to speak up about the retaliation or asked why his job duties are being taken away from him, it is either ignored, dismissed, or draws more retaliation from those to whom he has complained.

39. For example, most recently, Mr. Abdallah wrote a very professional email to Mr. Abada asking if there had been a change in his job duties because he had been taken off the HVAC network project that he was previously leading and was no longer being included in network meetings. He copied Mohammed Saleh, the districts newly hired Associate Chief Technology and Management Information Systems Officer.

40. Mr. Saleh called Mr. Abdallah into his office where he was threatened with termination for the email. Mr. Saleh aggressively berated Mr. Abdallah for the email, stating that if it were up to him, he would not renew Mr. Abdallah and that he would take will take away Mr. Abdallah's network admin rights. Mr. Abdallah tried to explain that he was documenting the ongoing retaliation against him, but Mr. Saleh stated that if Mr. Abdallah wrote such an email again, he would not "renew" him, terminating Mr. Abdallah's employment.

## COUNT 1

## VIOLATION OF CEPA

41.  Plaintiff repeats and re-alleges each of the preceding paragraphs as if fully incorporated herein.

42. Mr. Abdallah blew the whistle on nepotism, discrimination, and harassment within the Department of Technology when he wrote to and called Commissioner Arrington stating

10

that he believed Mr. Abada had engaged in nepotism and discrimination in hiring someone unqualified for a position and passing over qualified internal employees without even giving them an interview.

43. Plaintiff blew the whistle on discrimination, harassment, nepotism, waste, and improper hiring when he complained to the affirmative action office and other Paterson Public School employees.

44. As a result of Plaintiff's whistleblowing activities, Mr. Abdallah has experienced retaliation and adverse action at his job.

45. As a result of the retaliation, Mr. Abdallah has been and continues to be damaged.

## COUNT 2

## NJ LAD- DISCRIMINATION BASED ON ETHNICITY AND NATIONAL ORIGIN

46. Plaintiff repeats and re-alleges each of the preceding paragraphs as if fully incorporated herein.

47. The New Jersey Law Against Discrimination ("the NJ LAD") protects Mr. Abdallah from being discriminated against on the basis of his ethnicity and/or national origin.

48. Mr. Abdallah was passed over for a promotion, denied a pay raise, and denied growth due to his ethnicity, specifically because he is not Algerian and Mr. Abada preferred to hire someone of his own ethnicity and national origin, even though that person was not qualified and had no hands-on networking experience.

49. Mr. Abdallah was discriminated against because of his ethnicity.

50. As a consequence of this discrimination, Mr. Abdallah has been and continues to be damaged.

11

## COUNT 3

### NJ LAD- DISCRIMINATION BASED ON AGE

51. Mr. Abada's derogatory and discriminatory comments about age have created a hostile work environment for older workers.

52. Mr. Abada's hiring decisions reflection his animus toward older workers.

53. Mr. Abdallah was passed over for a promotion, a raise, and training, because of his age.

54. Mr. Abdallah was passed over for the position of network tech because Mr. Abada preferred to hire someone in his twenties and someone who appears to be younger than Mr. Abdallah.

55. As a consequence of this discrimination, Mr. Abdallah has been and continues to be damaged.

## COUNT 4

### UNLAWFUL RETALIATION UNDER THE NJLAD

56. Plaintiff engaged in protected activity under the NJ LAD when he filed an affirmative action complaint and lodged a complaint with a school board member concerning the fact that be believed he was being discriminated against based on protected characteristics.

57. Since engaging in the protected activity, Mr. Abdallah has been retaliated against by Defendants.

58. The retaliation was caused by Mr. Abdallah's protected activities under the NJ LAD.

59. As a consequence of this retaliation, Mr. Abdallah has been and continues to be damaged.

**COUNT 5**
**42 *U.S. C.* §1983 and §1988**
**(Paterson School District)**

60. During the earliest days of the pandemic, Mr. Abdallah played a critical role to keep the Paterson School district running and ensured that staff and faculty had remote access to their computers *via* the network, especially central office administrative staff. In addition, addressing and repairing any staff member's device that was brought in to central office. His hard work and dedication through that scary time was even noted in his evaluation.

61. In late 2020, three pharmaceuticals were granted emergency use authorization by the FDA for use as vaccines ("the covid shots").

62. In early April 2021, the covid shots became available to everyone 16 and older.[1]

63. It has always been a matter of public record that the covid shots were not authorized for prevention of infection or transmission of covid.[2]

64. The schools reopened to children on May 3, 2021.

65. On July 30, 2021, the CDC acknowledged that both vaccinated and unvaccinated carry "similarly high SARS-CoV-2 viral loads...which suggest[s] an increased risk of

---

[1] https://www.cnn.com/2021/03/30/health/states-covid-19-vaccine-eligibility-bn/index.html, Jacqueline Howard, CNN, All 50 states now have expanded or will expand Covid vaccine eligibility to everyone 16 and up (last accessed Nov. 28, 2022).
[2] Reuters Fact Check, *Fact Check-Preventing transmission never required for COVID vaccines' initial approval; Pfizer vax did reduce transmission of early variants*, (October 14, 2022) (stating "As clinical trial data on vaccine efficacy against the main endpoints – symptomatic and severe disease -- began to be released in November 2020… researchers and regulators made clear in public statements that the vaccines' effect on virus transmission remained unknown") available at https://www.reuters.com/article/factcheck-pfizer-vaccine-transmission-idUSL1N31F20E

transmission."[3]  As a consequence, the CDC stated that both vaccinated and unvaccinated should wear masks.

66.  In October 2021, Paterson School District adopted a policy requiring Mr. Abdallah to begin taking weekly medical tests as a condition of continued employment.  Upon information and belief, the Board did this to comply with Executive Order 253.

67.  Mr. Abdallah has never been required to undergo any medical testing as part of his employment before.

68.  Mr. Abdallah has never been required to undergo any drug or other testing of his bodily fluids as part of his employment before.

69.  The forced medical testing was intrusive into Mr. Abdallah's life and privacy.

70.  Mr. Abdallah's privacy was not protected at all. People would question him about his vaccination status because they knew he was testing.

71.  He had to avoid being seen to protect his privacy. He had to go out of his way to go to an outside medical facility, go to the basement, and test there to protect his privacy.  Despite these efforts to protect his privacy, his coworkers still found out because the school district failed to put proper controls in place to protect his privacy.

72.  In addition, Paterson School District kept a policy in place whereby Mr. Abdallah would be required to use his personal and sick days to quarantine if he tested positive, even with no symptoms. In contract, vaccinated coworkers who did not have to test did not face this risk. Paterson School District also required unvaccinated workers to quarantine for longer periods.

---

[3] Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR, July 30, 2021 available at https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (last accessed November 28, 2022).

14

73. This discriminatory and unequal policy took a heavy emotional toll on Mr. Abdallah because he was afraid of using up all his sick and vacation days on unnecessary quarantines, which would mean he could lose his job after they were all used.

74. Mr. Abdallah was required to undergo dozens of medical tests as a result of the Paterson School District's policy.

75. Each medical test constituted two separate searches and seizures: the first in the taking of Mr. Abdallah's bodily fluids and the second in the analysis.

76. The regiment of forced medical testing was unreasonable in frequency, duration, and intrusion into Mr. Abdallah's private time and life.

77. Upon information and belief, Mr. Abdallah's medical test results were sent to the local health board, his supervisor, the state government of New Jersey, the testing companies, and unknown other third parties.

78. The medical testing regime violated Mr. Abdallah's Fourth Amendment right to be free of unreasonable search and seizure, Fourteenth Amendment right to liberty, and Fourteenth Amendment right to privacy.

79. The medical testing regime violated Mr. Abdallah's Fourteenth Amendment right to be free from unwanted medical tests and procedures.

80. The medical testing regime violated Mr. Abdallah's right to equal protection under the Fourteenth Amendment because it treated him differently based on his exercise of a fundamental right, the right to decline unwanted medical procedures.

81. As a consequence of Paterson School District's unconstitutional actions, Mr. Abdallah has been and continues to be damaged.

**WHEREFORE,** Plaintiff demands judgment against Defendant for:

15

a)  Compensatory damages;

b)  Consequential damages;

c)  Emotional damages;

d)  Punitive damages;

e)  Costs of suit; and

f)  Attorneys fees.

Dated:        Wood-Ridge, New Jersey
              February 27, 2023

                                        LAW OFFICES OF DANA WEFER, LLC
                                        *Attorneys for Plaintiff Jalal Abdallah*


                                        _____*s/ Dana Wefer*_____
                                        Dana Wefer


## DESIGNATION OF TRIAL COUNSEL

Pursuant to R 4:25-4, Dana Wefer, Esq. is hereby designated as trial counsel.

Dated:        Wood-Ridge, New Jersey
              February 27, 2023

                                        LAW OFFICES OF DANA WEFER, LLC
                                        *Attorneys for Plaintiff Jalal Abdallah*


                                        _____*s/ Dana Wefer*_____
                                        Dana Wefer

16

## DEMAND FOR A JURY TRIAL

The Plaintiff demands trial by a jury on all triable issues of this Complaint, pursuant to R. 1:8-(2)(b) and 4:35-1(a).

Dated:        Wood-Ridge, New Jersey
                 February 27, 2023

LAW OFFICES OF DANA WEFER, LLC
*Attorneys for Plaintiff Jalal Abdallah*


_____/s Dana Wefer_____
Dana Wefer

## CERTIFICATION PURSUANT TO R 4:5-1

The undersigned certifies upon information and belief that the within matter is not directly and/or factually related to any other litigation or arbitration between the parties, and no other action or arbitration is contemplated.

Dated:        Wood-Ridge, New Jersey
                 February 27, 2023

LAW OFFICES OF DANA WEFER, LLC
*Attorneys for Plaintiff Jalal Abdallah*


_____/s Dana Wefer_____
Dana Wefer

17

# Civil Case Information Statement

## Case Details: PASSAIC | Civil Part Docket# L-000584-23

**Case Caption:** ABDALLAH JALAL  VS PATERSON BOARD OF ED UCATION

**Case Initiation Date:** 03/01/2023

**Attorney Name:** DANA LAUREN WEFER

**Firm Name:** DANA WEFER

**Address:** 290 HACKENSACK ST PO BOX 374
WOOD RIDGE NJ 07075

**Phone:** 9736100491

**Name of Party:** PLAINTIFF : Abdallah, Jalal

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** EMPLOYMENT (OTHER THAN CEPA OR LAD)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Jalal Abdallah? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
  **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
  **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/01/2023
Dated

/s/ DANA LAUREN WEFER
Signed

# EXHIBIT B

Law Offices of Dana Wefer, LLC
P.O. Box 374
290 Hackensack Street
Wood-Ridge, NJ 07075
973-610-0491

| | |
|---|---|
| JALAL ABDALLAH,<br><br>                                Plaintiff,<br><br>vs.<br><br>PATERSON BOARD OF EDUCATION,<br>SUPERINTENDENT EILEEN SHAFER,<br>DEPUTY SUPERINTENDENT SUSANA<br>PERON, YACINE ABADA, AND<br>MOHAMMED SALEH<br><br>                                Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: PASSAIC COUNTY<br><br>DOCKET NO. PAS-L-<br><br>CIVIL ACTION<br><br>**<u>AMENDED COMPLAINT</u>** |

Plaintiff Jalal Abdallah ("Plaintiff") by way of Complaint against the Paterson Board of Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Peron, and Yacine Abada and Mohammed Saleh (collectively "Defendants") says:

**<u>FACTS</u>**

*PLAINTIFF'S EMPLOYMENT AND THE DEPARTMENT'S ORGANIZATION*

1. Jalal Abdallah was hired by the Paterson School Board in February of 2006 as a PC Tech.

2. By his nature, Mr. Abdallah is constantly bettering himself and seeking to achieve new heights in his career. His resume is a smorgasbord of certifications, education, and training programs. He is always seeking new opportunities to learn skills, save the district money, and provide excellent service.

1

3.  When Mr. Abdallah began working for Paterson Public Schools in 2006, the department was called the Department of Technology. It was divided into a help desk section and IT support.

4.  From 2006 to 2021, Mr. Abdallah's evaluations enthused about his willingness to take on new tasks, learn new skills, and be a leader. His evaluators consistently recognized that he was ready to be promoted and take on more responsibilities, specifically and especially in the area of networking. For example:

    a.  Mr. Abdallah's 2021 evaluation stated that he "is a team leader" and that he was consistently present through the pandemic. Network Services Director Yacine Abada ("Mr. Abada"), stated that he "would like to see Mr. Abdallah involved more with networking projects and other network applications. HVAC…Security cameras, and other facilities technology equipment in the future."

    b.  Mr. Abdallah's 2020 evaluation recognized that he is a "member of the Network Services team of troubleshooters that oversees the network devices" and that Mr. Abdallah had specifically taken "ownership of Solarwinds network software and keeps it updated as the network always changes."  This evaluation noted that he "oversees network projects regarding the new district JACE heating and temperature systems…as well as the security cameras network needs."  His evaluator stated that he would "continue to explore ways to enable Jalal to have the necessary time and obtain the additional skills to meet any network related challenge that comes our way."

    c.  Mr. Abdallah's 2019 evaluation noted that he was continuing to grow and "evolve in the area of networking" and noted that he was "a member of the core Network Services team." He was praised because he "took ownership [of] and currently manages the network segment of projects dealing with camera and heating vendors."  The reviewer

2

noted that he "will seek to obtain more opportunities for Jalal to keep up with the newer upcoming network technology projects," which "would enable Jalal to have the necessary skills to meet the challenge of any future network troubleshooting and upgrades."

d. In 2017, Mr. Abdallah's review noted his readiness and capability to lead, stating that his supervisor would like him to "start making important decisions whenever there is a technology concern" and that he be able to "take additional networking courses to advance his skill set."

e. His 2016 review stated that the department was undergoing a restructuring process and "decided to increase Mr. Abdallah's responsibilities by having him work in a new capacity as a network specialist" and that he was being tasked "specifically with documenting the existing network configurations, holding our vendors accountable with providing more, add and change logs with our network and building his capacity" so that the department can become "proficient to manage our own network."

5. Mr. Abdallah takes pride in his work and has gone above and beyond to use his skills to benefit the district. For example, Mr. Abdallah saved the district money by working with Solarwinds' vendor's engineer and rebuilding the solarwinds program to contain all district network devices. This eliminated the need for a separate network monitoring vendor. The previous monitoring service called Presidio used to cost thousands of dollars a month to monitor the network.  Mr. Abdallah's work eliminated this expense for the district.

6. In 2013, Mr. Abdallah was promoted to the position of field tech support by Ralph Barca, who was the Director of Technology.

7. In April of 2014 Ralph Barca left his position as Director of Technology and Mr. Kenneth Sumter became the Interim Supervisor of Technology, a position he stayed in until April 2017. Mr. Abdallah worked closely and successfully with Mr. Sumter on district wide fiber network upgrade project.

8. In February of 2015 until June of 2019, Principal Mr. Jose Correa became Executive Director of Technology overseeing both Technology and Helpdesk departments. In May 2016, Dr. Jeron Campbell was hired as chief Data, Accountability, and Technology officer to oversee 4 departments; accountability, management information systems, assessment planning and evaluation, and technology. Eventually Ralph Barca's position was eliminated and divided into 2 new positions by Dr. Jeron Campbell in late 2017, "The Director of Network Services." and "The director of Business Applications".

9. When Mr. Abada became the Director of Network Services, there were two positions for Network Technicians ("network tech"), which had been unfilled since 2015 and 2016. The last employees in the network tech position were paid approximately $20,000 more than Mr. Abdallah's current salary.

*MR. ABDALLAH IS DENIED A PROMOTION AND RAISE DUE TO HIS ETHNICITY AND AGE*

10. In or around March 17, 2021, the network tech positions were reintroduced. Mr. Abdallah learned that the position was going to be filled because Mr. Abada sent him the job description so that Mr. Abdallah could edit it, as he has edited many documents for Mr. Abada in the past.

11. Mr. Abdallah aspired to officially become a network tech. He is qualified for the positon. In addition to more than a decade and a half of stellar evaluations and being one of the longest tenured employees in the department, he was already doing the duties associated

4

with the network tech job, was already on the Network Services Team, and had possessed full network access privileges for approximately five years, since network services started.

12. On March 17, 2021, Mr. Abdallah applied for the network tech position.

13. Mr. Abada discouraged Mr. Abdallah from applying for the network tech position, stating that they needed a highly qualified engineer "we can all learn from." Mr. Abdallah asked Mr. Abada: "Do you have someone in mind"? Mr. Abada paused and replied "Yes".

14. Mr. Abdallah maintained his application despite Mr. Abada's statement that he already had someone in mind for the position. Ultimately, Mr. Abdallah was not even called for an interview.

15. Upon information and belief, the hiring process for the network tech position was a sham.

16. Instead of hiring a highly qualified engineer, Mr. Abada hired Ilyes Khelaifi a fellow Algerian from NY with no hands-on networking experience or skills. In fact, Mr. Abdallah had to train Mr. Khelaifi on the basics of two widely used networking programs, Solarwinds and Putty. Putty is the most common software program used to gain access to network switches and routers for configuration purposes, yet Mr. Khelaifi had no experience with it. Mr. Khelaifi mentioned to Mr. Abdallah that he never used Putty and has no hands on network experience.

17. Mr. Khelaifi is also significantly younger than Mr. Abdallah.

18. Mr. Abada has a history of making negative comments to workers about their ages and threatening to replace older workers with younger workers.

19. For example, on numerous occasions, Mr. Abada has made comments to his subordinates that he needs to start hiring younger techs when older workers have called out sick or mentioned having back pain.

20. On one occasion when Mr. Abdallah and others were called on to work overtime, Mr. Abada said "You know I can hire teenagers to work this overtime for less money."

21. Mr. Abada's comments create a hostile work environment for older workers.

22. Mr. Abada's animus toward older workers is reflected in his hiring patterns. In 2021, there were 12 new hires and, upon information and belief, all but 3 are under 40. Moreover, Mr. Khelaifi, who was given the position of network tech over Mr. Abdallah, is in his twenties.

*MR. ABDALLAH BLOWS THE WHISTLE ON THE SHAM HIRING PROCESS AND THE RETALIATION BEGINS*

23. On September 22, 2021, Mr. Abdallah called Vince Arrington the board commissioner who was in charge of the Technology aspect of the Paterson Public School district. Mr. Abdallah told Commissioner Arrington about how he was denied an interview for the network tech position and that he suspected the hiring process was not done properly. He asked Mr. Arrington to look into the interview process. Mr. Arrington contacted Deputy Superintendent, Susana Peron, who oversees Network Services and Helpdesk within the school district and followed up with Mr. Abdallah to see if Dr. Peron had reached out to him. However, Dr. Peron never contacted Mr. Abdallah.

24. On October 13, 2021, Mr. Abdallah filed a complaint with the affirmative action office concerning the hostile environment Mr. Abada had created by making disparaging and discriminatory comments based on age and stating that he believes one of the reasons he did not even receive an interview for the network tech position is because he is over 50.

6

Mr. Abdallah's complaint was allegedly investigated and found unfounded, but Mr. Abdallah has not been given any more information about his complaint.

25. On March 30, 2022, Mr. Abdallah met with Luis Rojas, the Assistant Superintendent of Human Resources and a representative from the Affirmative Action Office. Mr. Abdallah told Assistant Superintendent Rojas that Mr. Abada had a history of hiring unqualified people for personal and discriminatory reasons. In particular, Mr. Abdallah told Mr. Rojas that Mr. Abada had hired Umer Farooq, a New York resident to work within the department because Mr. Farooq was the landlord of a friend of Mr. Abada's who belongs to the same Algerian community. In addition, Mr. Abdallah told Mr. Rojas that he believed Mr. Khelaifi was unqualified for the position of network tech and was hired based on Mr. Abada's improper consideration of Mr. Abdallah's age. Mr. Abdallah told Mr. Rojas about the retaliation he was experiencing as well. Mr. Rojas told Mr. Abdallah that he would elevate the issue to Dr. Peron.

26. Mr. Abdallah tried to blow the whistle on discrimination and sham hiring process for the network tech position through a variety of different channels, however none of his efforts went anywhere because they all were elevated to Dr. Peron, who did nothing. Dr. Peron appears to be close with Mr. Abada. Upon information and belief, Dr. Peron is protecting Mr. Abada and allowing the retaliation to continue to protect Mr. Abada and constructively terminate Mr. Abdallah.

27. Mr. Abdallah tried to go above Dr. Peron's head directly to the Superintendent Eileen Shafer, but she said that Human Resources had said his complaints were unfounded. It did nothing to resolve the retaliation Mr. Abdallah is experiencing.

7

28. Since blowing the whistle on the unqualified hires based on personal connections and waste and exercising his rights under the NJ LAD to Commissioner Arrington, Assistant Superintendent Rojas, and the affirmative action department, Mr. Abdallah has faced retaliation and a work environment so hostile that if Mr. Abdallah were to voluntarily leave, it would constitute constructive termination.

29. Mr. Abdallah's prior evaluations show a steady growth and leadership in the area of network services. Though the official position of network technician was not filled until June 2021, Mr. Abdallah's evaluations show that he was performing network service work, duties, and responsibilities already with an expectation of increased responsibilities and growth.

30. As part of the retaliation against him, Mr. Abdallah's projects and job responsibilities are being taken away from him and he is excluded from network related meetings that he would have been included in prior to the discrimination and retaliation.

31. As reflected in his evaluations, Mr. Abdallah was in charge of important network projects, but they have been taken away from him, including the network projects of any additional future Kronos implementations, HVAC, and security cameras.

32. Mr. Abdallah's 2022 evaluation shows that he has continued to be an outstanding employee, but the comments differ from his prior evaluations, describing him as "assisting" network services "when needed" instead of being a part of the network services team and leadership, as he was before the discrimination and retaliation began.

33. Moreover, Mr. Abdallah's 2022 evaluation wrongly states that he was absent 57 times. Mr. Abada counted Mr. Abdallah's vacation days as absences, which had never been done

8

before. Mr. Abdallah contacted the department confidential secretary, Ms. Sabrina Tanner, to find out how he could have this corrected. Ms. Tanner confirmed that vacation days are not supposed to be counted as absences. Mr. Abdallah has made an effort to reach out to human resources to have this corrected, but as far as he knows it has not been fixed. Upon information and belief, Mr. Abada counted Mr. Abdallah's vacation days as absences to create an appearance of absenteeism and create a pretext to fire him.

34. In addition to his duties being taken from him, he has received no training since 2021 while other Network Services team members, including Mr. Khelaifi, have received training on network devices, Wi-Fi software, Firewall, and network software that were upgraded in the district. Mr. Abdallah's prior trajectory of growth was derailed as part of the retaliation.

35. In addition to the above discrimination and retaliation, Mr. Abdallah is suffering under a hostile work environment as a result of the discrimination and retaliation. He is alienated, talked down to, yelled at, and just generally mistreated by Mr. Abada.

36. The retaliation against Mr. Abdallah is so overt that a coworker has commented on it to him and he has been warned that "Yacine Abada is looking for anything" to fire Mr. Abdallah. It is likely he has only been saved from termination because his unimpeachable work record leaves no room for pretext.

37. As a result of the discrimination, retaliation, and facts alleged in Count 4 of this complaint, Mr. Abdallah has suffered anxiety, sleepless nights, has lost over twenty pounds, and has suffered emotionally in a way that no person should be expected to endure.

38. Unfortunately, when Mr. Abdallah has tried to speak up about the retaliation or asked why his job duties are being taken away from him, it is either ignored, dismissed, or draws more retaliation from those to whom he has complained.

39. For example, most recently, Mr. Abdallah wrote a very professional email to Mr. Abada asking if there had been a change in his job duties because he had been taken off the HVAC network project that he was previously leading and was no longer being included in network meetings. He copied Mohammed Saleh, the districts newly hired Associate Chief Technology and Management Information Systems Officer.

40. Mr. Saleh called Mr. Abdallah into his office where he was threatened with termination for the email. Mr. Saleh aggressively berated Mr. Abdallah for the email, stating that if it were up to him, he would not renew Mr. Abdallah and that he will take away Mr. Abdallah's network admin rights. Mr. Abdallah tried to explain that he was documenting the ongoing retaliation against him, but Mr. Saleh stated that if Mr. Abdallah wrote such an email again, he would not "renew" him, terminating Mr. Abdallah's employment.

## COUNT 1

## NJ LAD- DISCRIMINATION BASED ON ETHNICITY AND NATIONAL ORIGIN

41. Plaintiff repeats and re-alleges each of the preceding paragraphs as if fully incorporated herein.

42. The New Jersey Law Against Discrimination ("the NJ LAD") prohibit employers from discriminating against individuals based on ethnicity and national origin.

43. Mr. Abdallah is a member of a protected class.

44. Mr. Abdallah was passed over for a promotion, denied a pay raise, and denied growth due to his ethnicity, specifically because he is not Algerian and Mr. Abada preferred to hire someone of his Algerian ethnicity and national origin, even though that person was not qualified and had no hands-on networking experience.

10

45.   Mr. Abdallah was discriminated against and denied advancement in his job because of his ethnicity and national origin.

46.   As a consequence of this discrimination, Mr. Abdallah has been and continues to be damaged.

## COUNT 2

## NJ LAD- DISCRIMINATION BASED ON AGE

47. Mr. Abada's derogatory and discriminatory comments about age have created a hostile work environment for older workers and are evidence of a bias against older workers.

48. Mr. Abada's hiring decisions reflect an animus toward older workers.

49. Mr. Abdallah was passed over for a promotion, a raise, and training, because of his age.

50. The position was given to someone significantly younger with significantly less experience.

51. Mr. Abdallah was passed over for the position of network tech because Mr. Abada preferred to hire someone in his twenties and someone who appears to be younger than Mr. Abdallah.

52. As a consequence of this discrimination, Mr. Abdallah has been and continues to be damaged.

## COUNT 3

## UNLAWFUL RETALIATION UNDER THE NJLAD

53.   Plaintiff engaged in protected activity under the NJ LAD when he filed an affirmative action complaint, lodged complaints with a school board member, assistant superintendent, and superintendent concerning the fact that he believed he was denied an interview for a position based on unlawful discrimination based on his age.

11

54.     Since engaging in the protected activity, Mr. Abdallah has been retaliated against by Defendants.

55.     The retaliation was caused by Mr. Abdallah's protected activities under the NJ LAD.

56. As a consequence of this retaliation, Mr. Abdallah has been and continues to be damaged.

**COUNT 4**
**42 *U.S. C.* §1983 and §1988**
**(Paterson School District)**

57.     During the earliest days of the pandemic, Mr. Abdallah played a critical role to keep the Paterson School district running and ensured that staff and faculty had remote access to their computers *via* the network, especially central office administrative staff. In addition, addressing and repairing any staff member's device that was brought in to central office. His hard work and dedication through that scary time was even noted in his evaluation.

58.     In late 2020, three pharmaceuticals were granted emergency use authorization by the FDA for use as vaccines ("the covid shots").

59.     In early April 2021, the covid shots became available to everyone 16 and older.[1]

60.     It has always been a matter of public record that the covid shots were not authorized for prevention of infection or transmission of covid.[2]

---

[1] https://www.cnn.com/2021/03/30/health/states-covid-19-vaccine-eligibility-bn/index.html, Jacqueline Howard, CNN, All 50 states now have expanded or will expand Covid vaccine eligibility to everyone 16 and up (last accessed Nov. 28, 2022).

[2] Reuters Fact Check, *Fact Check-Preventing transmission never required for COVID vaccines' initial approval; Pfizer vax did reduce transmission of early variants*, (October 14, 2022) (stating "As clinical trial data on vaccine efficacy against the main endpoints – symptomatic and severe disease -- began to be released in November 2020… researchers and regulators made clear in public statements that the vaccines' effect on virus transmission remained unknown") available at https://www.reuters.com/article/factcheck-pfizer-vaccine-transmission-idUSL1N31F20E

12

61.   The schools reopened to children on May 3, 2021.

62.   On July 30, 2021, the CDC acknowledged that both vaccinated and unvaccinated carry "similarly high SARS-CoV-2 viral loads...which suggest[s] an increased risk of transmission."[3]  As a consequence, the CDC stated that both vaccinated and unvaccinated should wear masks.

63.   In October 2021, Paterson School District adopted a policy requiring Mr. Abdallah to begin taking weekly medical tests as a condition of continued employment.  Upon information and belief, the Board did this to comply with Executive Order 253.

64.   Mr. Abdallah has never been required to undergo any medical testing as part of his employment before.

65.   Mr. Abdallah has never been required to undergo any drug or other testing of his bodily fluids as part of his employment before.

66.   The forced medical testing was intrusive into Mr. Abdallah's life and privacy.

67.   Mr. Abdallah's privacy was not protected at all. People would question him about his vaccination status because they knew he was testing.

68.   He had to avoid being seen to protect his privacy. He had to go out of his way to go to an outside medical facility, go to the basement, and test there to protect his privacy.  Despite these efforts to protect his privacy, his coworkers still found out because the school district failed to put proper controls in place to protect his privacy.

69.   In addition, Paterson School District kept a policy in place whereby Mr. Abdallah would be required to use his personal and sick days to quarantine if he tested positive, even with

---

[3] Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR, July 30, 2021 available at https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (last accessed November 28, 2022).

no symptoms. In contract, vaccinated coworkers who did not have to test did not face this risk. Paterson School District also required unvaccinated workers to quarantine for longer periods.

70. This discriminatory and unequal policy took a heavy emotional toll on Mr. Abdallah because he was afraid of using up all his sick and vacation days on unnecessary quarantines, which would mean he could lose his job after they were all used.

71. Mr. Abdallah was required to undergo dozens of medical tests as a result of the Paterson School District's policy.

72. Each medical test constituted two separate searches and seizures: the first in the taking of Mr. Abdallah's bodily fluids and the second in the analysis.

73. The regiment of forced medical testing was unreasonable in frequency, duration, and intrusion into Mr. Abdallah's private time and life.

74. Upon information and belief, Mr. Abdallah's medical test results were sent to the local health board, his supervisor, the state government of New Jersey, the testing companies, and unknown other third parties.

75. The medical testing regime violated Mr. Abdallah's Fourth Amendment right to be free of unreasonable search and seizure, Fourteenth Amendment right to liberty, and Fourteenth Amendment right to privacy.

76. The medical testing regime violated Mr. Abdallah's Fourteenth Amendment right to be free from unwanted medical tests and procedures.

77. The medical testing regime violated Mr. Abdallah's right to equal protection under the Fourteenth Amendment because it treated him differently based on his exercise of a fundamental right, the right to decline unwanted medical procedures.

14

78.     As a consequence of Paterson School District's unconstitutional actions, Mr. Abdallah has been and continues to be damaged.

**WHEREFORE,** Plaintiff demands judgment against Defendant for:

a) Compensatory damages;

b) Consequential damages;

c) Emotional damages;

d) Punitive damages;

e) Costs of suit; and

f) Attorneys fees.

Dated:          Wood-Ridge, New Jersey
                March 2, 2023

                                        LAW OFFICES OF DANA WEFER, LLC
                                        *Attorneys for Plaintiff Jalal Abdallah*


                                        _____*s/ Dana Wefer*_____
                                        Dana Wefer


## DESIGNATION OF TRIAL COUNSEL

Pursuant to <u>R</u> 4:25-4, Dana Wefer, Esq. is hereby designated as trial counsel.

Dated:          Wood-Ridge, New Jersey
                March 2, 2023

                                        LAW OFFICES OF DANA WEFER, LLC
                                        *Attorneys for Plaintiff Jalal Abdallah*

_____s/ Dana Wefer_____
Dana Wefer


## DEMAND FOR A JURY TRIAL

The Plaintiff demands trial by a jury on all triable issues of this Complaint, pursuant to R. 1:8-(2)(b) and 4:35-1(a).

Dated:        Wood-Ridge, New Jersey
              March 2, 2023

                                    LAW OFFICES OF DANA WEFER, LLC
                                    *Attorneys for Plaintiff Jalal Abdallah*


_____/s Dana Wefer_____
Dana Wefer


## CERTIFICATION PURSUANT TO R 4:5-1

The undersigned certifies upon information and belief that the within matter is not directly and/or factually related to any other litigation or arbitration between the parties, and no other action or arbitration is contemplated.

Dated:        Wood-Ridge, New Jersey
              March 2, 2023

                                    LAW OFFICES OF DANA WEFER, LLC
                                    *Attorneys for Plaintiff Jalal Abdallah*

16

_/s Dana Wefer_
Dana Wefer

17

# EXHIBIT C

**Inglesino, Webster, Wyciskala & Taylor, LLC**
Nicholas A. Grieco, Esq. NJ Attorney Id. No.: 031971990
Graham K. Staton, Esq. NJ Attorney Id. No.: 217602017
600 Parsippany Road, Suite 204
Parsippany, New Jersey 07054
(973) 947-7111
*Attorneys for Defendants, Paterson Board of Education, Superintendent Eileen Shafer,*
*Deputy Superintendent Susana Perone, Yacine Abada, and Mohammed Saleh*

| | |
|---|---|
| JALAL ABDALLAH**,**<br><br>      Plaintiff,<br><br>vs.<br><br>PATERSON BOARD OF EDUCATION**,** SUPERINTENDENT EILEEN SHAFER, DEPUTY SUPERINTENDENT SUSANA PERON, YACINE ABADA, AND MOHAMMED SALEH,<br><br>      Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: PASSAIC COUNTY DOCKET NO.: PAS-L-584-23<br><br>CIVIL ACTION NO.:<br><br>**NOTICE OF FILING OF NOTICE OF REMOVAL 28 <u>U.S.C.</u> § 1441** |

TO:          Clerk, Superior Court of New Jersey
             Hughes Justice Complex
             25 W. Market Street
             CN-970
             Trenton, New Jersey 08625

ON NOTICE TO:   Clerk, Superior Court of New Jersey
                Passaic County
                77 Hamilton Street
                Paterson, NJ 07505

                Dana Wefer, Esq.
                Law Offices of Dana Wefer, LLC
                P.O. Box 374
                290 Hackensack Street
                Wood-Ridge, NJ 07075

2035-06736\#899153v1

**PLEASE TAKE NOTICE** that Defendants Paterson Board of Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Perone, Yacine Abada, and Mohammed Saleh (collectively referred to as "Defendants"), by their attorneys Inglesino, Webster, Wyciskala & Taylor, LLC, have filed a Notice of Removal, a copy of which is attached hereto, in the United States District Court for the District of New Jersey, to remove this matter from the Superior Court of New Jersey, Law Division, Passaic County, to the United States District Court for the District of New Jersey.

You are also advised that Defendants served a copy of the Notice of Removal on all counsel of record.

**INGLESINO, WEBSTER, WYCISKALA & TAYLOR, LLC**
*Attorneys for Defendants, Paterson Board of Education, Superintendent Eileen Shafer, Deputy Superintendent Susana Perone, Yacine Abada, and Mohammed Saleh*

By:    */s/ Nicholas A. Grieco*
**NICHOLAS A. GRIECO, ESQ.**
ngrieco@iwwt.law
600 Parsippany Road, Suite 204
Parsippany, New Jersey 07054
(973) 947-7111

Dated: March 23, 2023

2035-06736\#899153v1